**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

No. 12-2017

───────────────

ROBERT D. MORT RANTA,

              Debtor - Appellant,

       v.

THOMAS PATRICK GORMAN,

              Trustee – Appellee.

------------------------------

NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS,

           Amicus Supporting Appellant.

───────────────

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Claude M. Hilton, Senior
District Judge.  (1:12-cv-00505-CMH-TCB; 11-18842-RGM)

───────────────

Argued:  March 20, 2013            Decided:  July 1, 2013

───────────────

Before GREGORY and AGEE, Circuit Judges, and David A. FABER,
Senior United States District Judge for the Southern District of
West Virginia, sitting by designation.

───────────────

Vacated and remanded by published opinion.  Judge Gregory wrote
the majority opinion, in which Judge Agee joined.  Senior Judge
Faber wrote a dissenting opinion.

───────────────

**ARGUED:** Daniel Mark Press, CHUNG & PRESS, PC, McLean, Virginia,
for Appellant.  Eva Choi, OFFICE OF THE CHAPTER 13 TRUSTEE,
Alexandria, Virginia, for Appellee.  **ON BRIEF:** Tara A. Twomey,

NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS, San Jose,
California, for Amicus Supporting Appellant.

---

GREGORY, Circuit Judge:

Robert D. Mort Ranta filed a voluntary petition for bankruptcy under Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 1301-1330, seeking to adjust various secured and unsecured debts. The bankruptcy court denied confirmation of his proposed Chapter 13 plan on the grounds that it did not accurately reflect his disposable income and that it was unfeasible if Mort Ranta's Social Security income was excluded from his "projected disposable income," as Mort Ranta urged.[1] The district court affirmed. We hold that the plain language of the Bankruptcy Code excludes Social Security income from the calculation of "projected disposable income," but that such income nevertheless must be considered in the evaluation of a plan's feasibility. For these reasons, we vacate and remand to the district court with instructions to remand the case to the bankruptcy court for further proceedings consistent with this opinion.

I.

At the time he filed the Chapter 13 petition, Mort Ranta owed $20,000 in arrears on his home mortgage loan, $12,981 in individual credit card debt, and $8,295 in joint credit card

---

[1] Although the docket lists the appellant's surname as "Ranta," his correct surname, according to his counsel, is "Mort Ranta." We therefore use "Mort Ranta" in the opinion.

3

debt with his wife. On Form B22(C), Mort Ranta reported a
"current monthly income" of $3,097.46, a figure derived from the
couple's combined average monthly income from employment over
the previous six months.

On Form B6I ("Schedule I"), however, Mort Ranta reported
his "combined average monthly income" as $7,492.10. That figure
reflected the couple's current monthly take-home pay from
employment, plus an additional $3,319 in combined monthly Social
Security benefits. His monthly expenses were reported on Form
B6J ("Schedule J") as $6,967.24. Subtracting that figure from
his "combined average monthly income," his "monthly net income"
per Schedule J was $524.86.

Mort Ranta proposed a plan requiring payments of $525 per
month for five years, for a total of $31,500. From that amount,
the plan would pay off in full his mortgage arrears and joint
credit card debt. However, his individual credit card debt
would be paid off at less than one percent.[2]

The Trustee objected to the plan, claiming that it failed
to dedicate Mort Ranta's full "projected disposable income" to
creditors as required by 11 U.S.C. § 1325(b)(1)(B).[3]

---

[2] Specifically, the plan would provide a distribution of
.0042 on the individual credit card debt.

[3] As explained below, § 1325(b)(1) applies when the Trustee
or an unsecured creditor objects to a Chapter 13 plan. In that
case, the plan may not be approved unless it (A) fully pays the
(Continued)

Specifically, the Trustee contended that the expenses listed on Schedule J were overstated and that Mort Ranta's disposable income therefore was higher than it appeared to be.

In a hearing before the bankruptcy court, Mort Ranta conceded that some of his expenses were overstated, but argued that his plan nevertheless complied with § 1325(b)(1)(B) because Social Security income is excluded from the calculation of "disposable income." Thus, even after adjusting his expenses downward, he argued that his disposable income would be negative because his expenses would still exceed his non-Social Security income. As a result, Mort Ranta contended he was not required to make any payments to unsecured creditors under § 1325(b)(1)(B).

In a colloquy with the parties, the bankruptcy court determined that if Mort Ranta's monthly payments were increased to reflect his actual net income, including Social Security, the total payments under the plan would be approximately $50,000. That amount would allow for full repayment of all debts, including the individual credit card debt that would be paid off at less than one percent under Mort Ranta's proposed plan. Thus, the Trustee noted, the holder of that unsecured

---

unsecured claim or (B) dedicates all the debtor's "projected disposable income" during the commitment period to payments to unsecured creditors.  11 U.S.C. § 1325(b)(1)(B).

debt would either "get paid pretty much in full like everybody else or [under Mort Ranta's proposed plan] they get nothing."

The bankruptcy court agreed with the Trustee that Mort Ranta "[could] afford something greater [than what he proposed to pay] because there's . . . income from Social Security." The court then found that Mort Ranta's plan was not feasible, explaining:

> If you don't want to count Social Security for the purposes of the income then I think you have to go back to the rule of law of disposable income. If you're not going to add it to income you're not going to have feasibility for the plan. It's not feasible.

At this point, Mort Ranta asked the court to grant an interlocutory appeal, and the court denied his request. The court subsequently issued a written order denying confirmation of the plan and ordering the case dismissed in 21 days unless Mort Ranta took one of the actions enumerated in Rule 3015-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court of the Eastern District of Virginia.[4]

Mort Ranta appealed to the United States District Court for the Eastern District of Virginia. In a motion for leave to appeal, Mort Ranta noted that "the majority rule is that denial

---

[4] The enumerated actions include filing a new modified Chapter 13 plan, converting the case to another chapter of the Bankruptcy Code, filing a motion for reconsideration, or appealing the denial of confirmation. Bankr. Ct. R. 3015-2(H)(3).

of confirmation is interlocutory," but preserved his position that the denial should be considered a final order for purposes of appeal. The Trustee opposed the motion, arguing that the appeal did not meet the criteria for interlocutory appeal under 28 U.S.C. § 158(a)(3).

Without addressing the basis for its jurisdiction or the motion for leave to file, the district court affirmed the bankruptcy court's denial of confirmation in a written order. The court reasoned:

> In this case, the Bankruptcy Court appropriately found that the Debtor could afford to pay an amount greater than that proposed in his Chapter 13 plan. Neither the Bankruptcy Code nor the Social Security Act prohibits a bankruptcy court from determining a debtor's ability to repay his or her creditors, and in this case part of that consideration included Debtor's supplemental Social Security retirement benefits. Because Debtor voluntary[sic] chose not to include Social Security benefits for purposes of income in this particular case, the Bankruptcy Court found that Debtor's proposed Chapter 13 Plan was not feasible. . . . [T]hese findings of the Bankruptcy Court are neither erroneous nor contrary to law . . . .

Ranta v. Gorman, No. 1:12-CV-505 at 2 (E.D.V.A. August 6, 2012). Mort Ranta timely appealed.

On appeal, Mort Ranta asks us to reverse the district court's order affirming the bankruptcy court's denial of confirmation, thereby overruling the Trustee's objection to confirmation. He argues first that the Bankruptcy Code expressly excludes Social Security income from the calculation

of projected disposable income; and second, that his plan is
feasible based on his Social Security income.   Before turning to
the merits of his appeal, first we must satisfy ourselves of our
appellate jurisdiction over the case.


II.

Mort Ranta asserts appellate jurisdiction under 28 U.S.C.
§ 158(d)(1), which grants the courts of appeal jurisdiction over
appeals from "all final decisions, judgments, orders, and
decrees" entered by the district court sitting in review of the
bankruptcy court.[5]  Both the district court order and the
bankruptcy court order must be final for our jurisdiction to be
proper under § 158(d)(1).   See In re Computer Learning Ctrs.,
Inc., 407 F.3d 656, 660 (4th Cir. 2005).

When a bankruptcy debtor's proposed plan is confirmed, we
have generally allowed creditors and trustees whose objections
to the plan were overruled to appeal as a matter of right.   See,
eg., In re Quigley, 673 F.3d 269, 270 (4th Cir. 2012) (trustee's
appeal from district court's affirmance of bankruptcy court
order overruling in part trustee's objection to proposed plan);
Neufeld v. Freeman, 794 F.2d 149, 150 (4th Cir. 1986)

---

[5]  Mort Ranta does not claim to have complied with the
procedure for certifying a direct appeal under § 158(d)(2).

(creditor's appeal from district court's affirmance of bankruptcy court's confirmation of proposed plan).

By the same token, we have a long history of allowing appeals from debtors whose proposed plans are <u>denied</u> confirmation, without questioning the finality of the underlying order. <u>See, e.g.</u>, <u>In re Coleman</u>, 426 F.3d 719, 722, 727 (4th Cir. 2005) (appeal from bankruptcy court order, affirmed by district court, withdrawing confirmation of debtor's plan and granting debtor 30 days to file an amended plan); <u>In re Witt</u>, 113 F.3d 508, 509, 513 (4th Cir. 1997) (appeal from district court order reversing bankruptcy court's confirmation of plan and remanding to allow debtor to propose amended plan); <u>In re Solomon</u>, 67 F.3d 1128, 1130-31 (4th Cir. 1995) (appeal from bankruptcy court order, affirmed by district court, denying confirmation of plan); <u>Caswell v. Lang</u>, 757 F.2d 608, 608 (4th Cir. 1985) (same); <u>Deans v. O'Donnell</u>, 692 F.2d 968, 968 (4th Cir. 1982) (same).[6]

However, as described below, the finality of an order denying confirmation of a proposed plan but not dismissing the

---

[6] In tension with this practice, in an unpublished decision we once dismissed an appeal similar to the one at bar for lack of appellate jurisdiction. <u>See</u> <u>In re Massey</u>, 21 F. App'x 113, 114 (4th Cir. 2001) (per curiam) (unpublished). This decision has minimal persuasive value, however, as it relied entirely on out-of-circuit authority without providing any independent reasoning. <u>See</u> <u>id.</u>

underlying bankruptcy petition is an issue that has divided
other circuits.  On one side, four circuits have held that such
orders are strictly interlocutory, while two other circuits have
held that they can be final for purposes of appeal.  See infra
pp. 11-15.  Given this circuit split, and the fact that we have
not squarely addressed this issue before, we asked the parties
to file supplemental briefs addressing the basis for our
appellate jurisdiction.  After considering the principles of
finality unique to bankruptcy cases and the decisions of other
circuits, we conclude that the bankruptcy court's denial of Mort
Ranta's proposed plan and the district court's affirmance are
final orders for purposes of appeal, and that our appellate
jurisdiction is proper.

As we have recognized on many occasions, the concept of
finality in bankruptcy traditionally has been applied in a "more
pragmatic and less technical way" than in other situations.
McDow v. Dudley, 662 F.3d 284, 287 (4th Cir. 2011) (quoting
Computer Learning Ctrs., 407 F.3d at 660).  The reason for this
"relaxed rule of appealability" is that bankruptcy proceedings
are often protracted, involving multiple parties, claims, and
procedures, and postponing review of discrete portions of the
action until after a plan of reorganization is approved could
result in the waste of valuable time and scarce resources.
McDow, 662 F.3d at 287 (quoting A.H. Robins Co. v. Piccinin, 788

F.2d 994, 1009 (4th Cir. 1986)).   Thus, in bankruptcy cases, we
allow immediate appellate review of orders that "finally dispose
of discrete disputes within the larger case."     Id. at 287
(quoting Computer Learning Ctrs., 407 F.3d at 660).[7]

Applying these principles, we have held final and
appealable a variety of orders that resolve a specific dispute
within the larger case without dismissing the entire action or
resolving all other issues.  See, eg., McDow, 662 F.3d at 286-90
(denial of trustee's motion to dismiss bankruptcy case as
abusive); Comm. of Dalkon Shield Claimants v. A.H. Robins Co.,
Inc., 828 F.2d 239, 241 (4th Cir. 1987) (denial of request by
claimants for appointment of trustee); Piccinin, 788 F.2d at
1009 (order fixing venue).

By contrast, we have held interlocutory bankruptcy court
orders that are provisional in nature and subject to revision,
and district court orders that remand the case to bankruptcy
court without consideration of the merits of the appeal.  See,
eg., Computer Learning Ctrs., 407 F.3d at 661 (interim fee award
subject to reevaluation by bankruptcy court); In re Wallace &

---

[7] We have applied the same relaxed and pragmatic approach to
finality whether the appeal is brought under 28 U.S.C. §§ 158 or
1291.   Compare McDow v. Dudley, 662 F.3d 284, 286-87 (4th Cir.
2011) (applying the more pragmatic and less technical approach
in an appeal brought under § 158), with Comm. of Dalkon Shield
Claimants v. A.H. Robins Co., Inc., 828 F.2d 239, 241 (4th Cir.
1987) (using the same approach in an appeal brought under
§ 1291).

Gale Co., 72 F.3d 21, 23-24 (4th Cir. 1995) (district court
order remanding case to bankruptcy court with instructions to
certify an interlocutory appeal); In re Looney, 823 F.2d 788,
790-91 (4th Cir. 1987) (bankruptcy court order continuing
automatic stay until hearing on the merits of creditor's motion
for relief from stay).

In contrast to the interlocutory orders in those cases,
here the bankruptcy court order clearly resolved a discrete
issue, indeed, the only issue, in Mort Ranta's bankruptcy case—
that is, whether his proposed Chapter 13 plan merits
confirmation.  The bankruptcy court order denied confirmation of
the proposed plan and directed the case dismissed unless Mort
Ranta took further action, and the district court's order simply
affirmed.  Nothing in either of the orders indicates that any
issues concerning the proposed plan remained for the bankruptcy
court's consideration.

The argument against treating a denial of confirmation
final for purposes of appeal rests primarily on the fact that
the debtor may propose an amended plan before the case is
dismissed.  The Second Circuit first articulated this reasoning
in Maiorino v. Branford Sav. Bank, 691 F.2d 89 (2d Cir. 1982),
which held that the denial of a Chapter 13 plan is

12

interlocutory.[8]   As the Maiorino court explained, "[s]o long as
the petition is not dismissed, it is open to the debtor to
propose another plan, and . . . such a plan might well be
acceptable to the parties or bankruptcy judge concerned."   691
F.2d at 91 (citation omitted).   Following the Second Circuit,
three other circuits have held that a decision denying
confirmation of a proposed plan but not dismissing the
underlying bankruptcy petition is an interlocutory order.   See
In re Lievsay, 118 F.3d 661, 662 (9th Cir. 1997) (per curiam);
Lewis v. United States, Farmers Home Admin., 992 F.2d 767, 773
(8th Cir. 1993); In re Simons, 908 F.2d 643, 645 (10th Cir.
1990) (per curiam).   According to the Tenth Circuit, "[t]his
approach is entirely consistent" with two general principles
regarding finality:   (1) that an order is not final unless it
"ends the litigation on the merits, leaving nothing for the
court to do but execute the judgment"; and (2) that a district
court order is not final if it "contemplates significant further
proceedings in the bankruptcy court."   Simons, 908 F.2d at 644-
45.

---

[8]   The jurisdictional statute at issue in that case was
former 28 U.S.C. § 1293(b), which was replaced by 28 U.S.C.
§ 158(d) when Congress enacted the Bankruptcy Amendments and
Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333.
"Because both statutes contain the finality requirement, courts
have applied the cases brought under section 1293(b) to section
158(d) cases."   In re Brown, 803 F.2d 120, 122 n.3 (3d Cir.
1986).

We are not persuaded that a denial of confirmation should be considered an interlocutory order simply because the debtor could propose an amended plan. That conclusion appears to be grounded upon standard finality principles, as demonstrated by the Tenth Circuit's observations in Simons, rather than the more flexible approach to finality traditionally applied in bankruptcy proceedings. Indeed, Maiorino, the seminal decision upon which nearly all other courts have relied, made no mention of a flexible approach, and instead opined that "[f]rom a policy point of view . . . there is something to be said in a day of burgeoning appellate dockets for taking care not to construe jurisdictional statutes . . . with great liberality." 691 F.2d at 91. Although some courts have paid lip service to the flexible approach even as they have held denials of confirmation interlocutory, see, eg., In re Flor, 79 F.3d 281, 283 (2d Cir. 1996) (per curiam); Lewis, 992 F.2d at 772, they have generally used the same reasoning as Maiorino--that such orders are interlocutory because additional proceedings are available-- which is consonant with a more rigid approach, see In re Bartee, 212 F.3d 277, 282 n.6 (5th Cir. 2000) (observing that the Second and Tenth Circuits have "favor[ed] a rigid rule of finality" in holding that denials of confirmation are interlocutory).

Moreover, we find questionable the logic that denials of confirmation are interlocutory simply because the debtor may

14

propose an amended plan, for the same can be said of a
confirmation order.  Even after a plan is confirmed, the debtor
is always free to propose a modification to the plan, which
could substantially modify the terms of repayment and the rights
of creditors.  <u>See</u> 11 U.S.C. § 1329(a).  (Indeed, even the
Trustee and the creditors may propose a modification.  <u>Id.</u>)

We therefore agree with the more pragmatic approach of
those circuits that have held that a denial of confirmation can
be a final order for purposes of appeal even if the case has not
yet been dismissed, recognizing that this conclusion "is all but
compelled by considerations of practicality."  <u>Bartee</u>, 212 F.3d
at 283; <u>see also</u> <u>In re Armstrong World Indus., Inc.</u>, 432 F.3d
507, 511 (3d Cir. 2005) (holding that a denial of confirmation
was a final order for purposes of appeal, in part, due to
"practical considerations in the interests of judicial
economy").[9]

As the Fifth Circuit explained in <u>Bartee</u>, a contrary rule
could leave some debtors "without any real options in
formulating [their] plan."  212 F.3d at 283.  Assuming an

_____

[9] While we find the decisions of these circuits persuasive,
contrary to the dissent's assertions, we do not adopt any of the
methodology they use to evaluate finality in bankruptcy (such as
multi-factor tests), which the dissent considers too
"indeterminate."  <u>See</u> <u>infra</u> pp. 42 n.6, 43-44, 51-52.  Rather,
our decision is based on the principles of finality
traditionally applied by our Circuit in bankruptcy cases.  <u>See</u>
<u>supra</u> pp. 9-10.

interlocutory appeal is unavailable, the debtor who prefers the proposed plan and seeks to appeal the denial would be forced to "choose between filing an unwanted or involuntary plan and then appealing his own plan, or dismissing his case and then appealing his own dismissal." Id. Forced to suffer dismissal, the debtor could lose the automatic stay on foreclosure and collection actions that takes effect upon the filing of the Chapter 13 petition, see 11 U.S.C. § 362, and could be precluded from filing another bankruptcy petition for six months, see id. § 109(g). Forced to propose an unwanted plan, the debtor would waste "valuable time and scarce resources," McDow, 662 F.3d at 287, on a plan proposed only for the purpose of obtaining appellate review of the earlier order.[10] Thus, as a practical matter, it makes little sense to deny debtors immediate

---

[10] In addition, the procedural oddity of allowing a debtor to appeal the confirmation of his or her own proposed plan raises questions regarding standing. To have standing to appeal a bankruptcy order, the appellant must be a "person aggrieved" by the order, that is, a person "directly and adversely affected pecuniarily." In re Urban Broad. Corp., 401 F.3d 236, 243-44 (4th Cir. 2005). Although the Eighth Circuit has held that a debtor forced to propose an amended plan has standing to appeal as a "person aggrieved" by the confirmation order, see In re Zahn, 526 F.3d 1140, 1142 (8th Cir. 2008) (reversing the contrary ruling of the Bankruptcy Appellate Panel), we have not yet addressed this issue.

appellate review simply because the case has not yet been dismissed and the debtor could propose an amended plan.[11]

In arguing that the denial of confirmation should be considered interlocutory, the dissent contends that a "discrete dispute" should be limited, for purposes of evaluating the finality of a bankruptcy order, to "situations where one creditor's rights become fixed while other issues in the bankruptcy case remain unresolved." Infra p. 40. However, our Circuit has never articulated such a strict rule. Instead, as described above, we have held final a variety of orders that resolved a discrete dispute without fixing the rights of any one creditor. See infra p. 10 (collecting cases).

The dissent also contends that our decision "needlessly expands appellate jurisdiction" in bankruptcy, encouraging "start-and-stop" appeals from debtors whose plans are denied confirmation, discouraging negotiation and mediation in reorganization cases, and hampering the very aim of judicial economy guiding our decision. Infra p. 54. We disagree. First, as described above, our Court has a long history of

---

[11] The dissent argues that our reasoning "assumes too much of the debtor's intent." Infra p. 53. However, it is reason, not assumption, which leads us to conclude that the initial plan proposed by the debtor is the debtor's preferred plan-- especially given that the Bankruptcy Code requires Chapter 13 debtors to propose their plans in good faith, see 11 U.S.C. § 1325(a)(3)--and therefore that some debtors will disagree with the denial of confirmation and want to appeal the decision.

17

allowing appeals from debtors whose proposed plans are denied
confirmation.  Infra p. 8.  Our holding today does not extend
our appellate jurisdiction but instead justifies its existing
parameters.[12]

Moreover, we see no reason to assume that debtors faced
with a denial of confirmation will waste their resources on a
gratuitous appeal simply because the option to appeal is
available, when an amended plan would provide all the relief
needed.  Thus, to the extent the dissent suggests that our
decision will encourage an onslaught of senseless "start-and-
stop appeals," undermining judicial economy, see infra p. 54, we
disagree.  Indeed, the alternative adopted by the courts upon
which the dissent relies, that is, allowing debtors to appeal
the denial of confirmation after an amended plan is confirmed,
see, eg., In re Zahn, 526 F.3d 1140, 1143-44 (8th Cir. 2008), is
hardly less economical, for it simply delays the inevitable in
cases where the amended plan is unacceptable to the debtor.

Finally, we do not think it necessary to treat denials of
confirmation as interlocutory in order to encourage negotiation
and mediation in reorganization cases.  As noted by the dissent

---

[12] We do not rely, as the dissent suggests, infra pp. 45-46,
on any sub silentio holdings in the cases cited infra page 8.
Rather, we cite these cases to show that our Circuit has a
history of hearing appeals from denials of confirmation, even if
we have not yet squarely addressed the basis for our
jurisdiction.

18

in Maiorino, the effect of such a rule is that "when creditors lose and a plan is confirmed, creditors may appeal immediately as of right," but "when debtors lose and a plan is rejected, they may appeal only by leave of the [reviewing] court," 691 F.2d at 95 (Lumbard, J., dissenting). Given that "Congress enacted Chapter 13 to aid consumer debtors," id., whatever the value of negotiation and mediation in Chapter 13 cases, that value is best fostered by an even playing field that affords debtors the same access to relief on appeal as creditors when a decision regarding the proposed plan is adverse to their interests.[13]

In sum, because it is evident from the face of the underlying orders that confirmation of Mort Ranta's proposed plan was finally denied, it would make little sense to force Mort Ranta to suffer dismissal or to waste resources on an amended plan before obtaining appellate review. Such a rule would be inconsistent with the pragmatic, less technical approach to finality we apply in bankruptcy proceedings. We

---

[13] The dissent also argues that our decision "effectively reads out" the avenues for interlocutory relief afforded by the certification provisions of 28 U.S.C. §§ 158(d)(2) and 1291(b). Infra p. 54. This is not so. Those provisions remain available to authorize direct appeals from any number of bankruptcy court rulings on novel or disputed legal issues, or other issues of importance, without regard to the finality of the underlying order. We simply hold, regardless of whether this case presents such an issue, that the denial of confirmation is appealable as a final order.

therefore conclude that the bankruptcy court's denial of confirmation and the district court's affirmance are final orders for purposes of appeal under § 158(d)(1), and our appellate jurisdiction is proper.[14]

## III.

Turning to the merits of the appeal, Mort Ranta argues that the bankruptcy court erred in denying confirmation of his plan because the Bankruptcy Code excludes Social Security income from the calculation of "projected disposable income," and because his plan is feasible based on consideration of that income. When reviewing a decision by a district court sitting in its capacity as a bankruptcy appellate court, we review the factual findings of the bankruptcy court for clear error and the legal conclusions de novo. <u>In re Kirkland</u>, 600 F.3d 310, 314 (4th Cir. 2010). Because this appeal presents only questions of statutory interpretation and the facts are undisputed, our review is de novo. <u>In re White</u>, 487 F.3d 199, 204 (4th Cir. 2007).

---

[14] During the pendency of this appeal, the bankruptcy court conditionally confirmed Mort Ranta's proposed plan pending the outcome of his appeal to allow the Trustee to disburse to creditors funds Mort Ranta had paid to the Trustee. Mort Ranta argues that the conditional confirmation order cures any defect in the finality of the denial of confirmation. Because we hold that the denial of confirmation is final and appealable, we do not reach this argument.

A.

Chapter 13 of the Bankruptcy Code allows debtors with regular income to repay or discharge certain debts after making payments to creditors for a specified commitment period, generally three to five years. See 11 U.S.C. §§ 1301-1330. To obtain relief, the debtor must propose a debt adjustment plan that meets all the requirements for confirmation set forth in the Code. See id. §§ 1322, 1325. Relevant here, if the Trustee or an unsecured creditor objects to confirmation of the plan, the plan must either fully pay the unsecured claim or provide that all the debtor's "projected disposable income" to be received during the applicable commitment period will be applied to make payments to unsecured creditors. Id. § 1325(b)(1). Prior to 2005, the Code defined disposable income as "income which is received by the debtor" less amounts reasonably necessary for the maintenance or support of the debtor, certain charitable contributions, and certain business expenses. 11 U.S.C. § 1325(b)(2) (2000). Based on this definition, "courts typically included Social Security benefits in the calculation of disposable income." Baud v. Carroll, 634 F.3d 327, 347 (6th Cir. 2011) (collecting cases).

In 2005, however, Congress amended the definition of "disposable income" with the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub.L.

21

No. 109-8, 119 Stat. 23 (2005). The Code now defines "disposable income" as "current monthly income received by the debtor" less "amounts reasonably necessary to be expended" for the maintenance or support of the debtor, certain charitable contributions, and certain business expenses. 11 U.S.C. § 1325(b)(2). "[C]urrent monthly income" means the debtor's average monthly income from all sources during the previous six months, excluding, among other things, "benefits received under the Social Security Act." Id. § 101(10A). Thus, Social Security income is now excluded from the definition of "disposable income." In addition, the Code now requires above-median income debtors to use the "means test"--a statutory formula for determining whether a presumption of abuse arises in Chapter 7 cases--when calculating the "amounts reasonably necessary to be expended" for the debtor's maintenance or support. See id. §§ 1325(b)(3), 707(b)(2). As a result, only certain specified expenses are included in the above-median income debtor's "amounts reasonably necessary" for maintenance or support. Id. For below-median income debtors, however, the full amount reasonably necessary for maintenance and support is included. See § 1325(b)(2)(A)(i).

Although the Bankruptcy Code defines the term "disposable income," it does not specifically define "projected disposable income." However, in Hamilton v. Lanning, the Supreme Court

22

explained that "projected disposable income" should be
calculated based on "disposable income," using a "forward-
looking approach." 130 S. Ct. 2464, 2469 (2010). First, the
debtor's "disposable income" should be multiplied by the number
of months in the debtor's plan, and in most cases the result
will be determinative. Lanning, 130 S. Ct. at 2471. However,
"in exceptional cases, where significant changes in a debtor's
financial circumstances are known or virtually certain, the
bankruptcy court has discretion to make an appropriate
adjustment." Id.; see also In re Quigley, 673 F.3d 269, 273-74
(4th Cir. 2012) (noting that under Lanning, bankruptcy courts
may account for foreseeable changes in both income and
expenses).

Following Lanning, a debtor's "projected disposable income"
is based on the debtor's "disposable income," give or take any
adjustments necessary to account for foreseeable changes in that
income. Because the Code expressly excludes Social Security
income from "current monthly income," and thus, "disposable
income," it follows that Social Security income must also be
excluded from "projected disposable income." Indeed, every
other circuit to address this issue has arrived at the same
conclusion. See In re Welsh, 711 F.3d 1120, 1127 n.28, 1130-31
(9th Cir. 2013) (noting that the statute clearly excludes Social
Security income); In re Ragos, 700 F.3d 220, 223 (5th Cir. 2012)

23

(same); <u>In re Cranmer</u>, 697 F.3d 1314, 1317-18 (10th Cir. 2012)
(same); <u>Baud</u>, 634 F.3d at 345 (same).

The Trustee's arguments to the contrary are neither
persuasive nor consistent with the plain language of the Code.
The Trustee first claims that the revised definition of
"disposable income" applies only to above-median income debtors,
not to below-median income debtors, like Mort Ranta.  But the
Code provides a single definition of "disposable income," and
that definition uses "current monthly income" as a starting
point without differentiating between debtors of different
income levels.  11 U.S.C. § 1325(b)(2).  Although the Code goes
on to distinguish between above-median income and below-median
income debtors for purposes of calculating the "amounts
reasonably necessary" for the debtor's maintenance or support,
<u>id.</u> § 1325(b)(3), there is no distinction on the income side.

Next, the Trustee argues that the Supreme Court's decision
in <u>Lanning</u> allows Social Security income to be included in
"projected disposable income" even if it is excluded from
"disposable income."  In <u>Lanning</u>, however, the Court held only
that foreseeable changes in the debtor's financial circumstances
may be taken into account when calculating "projected disposable
income," not that the basic formula for "disposable income" may
be ignored.  <u>See</u> <u>Cranmer</u>, 697 F.3d at 1318 ("[N]othing in
<u>Lanning</u> suggests a court may disregard the Code's definition of

disposable income in calculating projected disposable income."); Baud, 634 F.3d at 345 ("[T]he discretion Lanning affords . . . does not permit the court to alter the items to be included in and excluded from income."). We do not consider Lanning to authorize the bankruptcy court to read out of the Code the BAPCPA's revisions to the definition of "disposable income." "If Congress excluded social security income from current monthly income and disposable income, it makes little sense to circumvent that prohibition by allowing social security income to be included in projected disposable income." Ragos, 700 F.3d at 223.

The Trustee also argues that Social Security income must be included in the calculation of a below-median income debtor's "disposable income" because Schedule I contains a line for its inclusion. The Trustee contends that Schedule I is used with Schedule J to calculate the disposable income of below-median income debtors. The language of the forms, however, does not support the Trustee's contention. Schedule I states that it calculates "average monthly income," not "current monthly income." And Schedule J, which references Schedule I, calculates "monthly net income," not "disposable income." The bankruptcy court may not "disregard the Code's definition of disposable income . . . simply because there is a disparity between the amount calculated using that definition and the

debtor's actual available income as set forth on Schedule I."
Baud, 634 F.3d at 345.

Given the Trustee's confusion over this issue, we emphasize
that, for all debtors, the starting point for calculating
projected disposable income is the debtor's "current monthly
income," which is provided by Form B22(C).  For above-median
income debtors, Parts IV and V of Form B22(C) allow the debtor
to calculate "disposable income" by deducting the limited
expenses allowed under the means test from the debtor's "current
monthly income."  For below-median income debtors, however,
"disposable income" should be calculated by subtracting the full
amount "reasonably necessary to be expended" for the debtor's
support or maintenance, based on information provided in
Schedule J, from the "current monthly income" figure.  Using the
"disposable income" figure, "projected disposable income" should
then be calculated consistent with the Supreme Court's
instructions in Lanning.

Finally, the Trustee argues that failing to require below-
median income debtors to include Social Security income in their
"projected disposable income" would contravene Congress' intent
to eradicate bankruptcy abuse when it enacted the BAPCPA.  See
Ransom v. FIA Card Servs., N.A., 131 S. Ct. 716, 721 (2011)
("Congress enacted the [BAPCPA] to correct perceived abuses of
the bankruptcy system.  In particular, Congress adopted the

means test . . . to help ensure that debtors who <u>can</u> pay
creditors <u>do</u> pay them.") (internal quotation marks and citations
omitted). For instance, the Trustee argues that if Social
Security income is not included, then debtors will have total
discretion to dictate the amount of income they want to
contribute to the plan. But this is not necessarily so. It is
true that a Chapter 13 debtor with zero or negative "projected
disposable income" is not required to apply any income to
payments to unsecured creditors under § 1325(b)(1)(B). The
debtor's plan, however, still must satisfy every other
requirement for confirmation set forth in the Code. Among other
requirements, the plan must meet the "best interests of the
creditors" test, i.e., unsecured creditors must not receive less
than they would in a Chapter 7 liquidation of the estate, 11
U.S.C. § 1325(a)(4), and the plan must have been proposed in
good faith, <u>id.</u> § 1325(a)(3).[15]

---

[15] We note, however, that the exclusion of Social Security
income from disposable income, as required by statute, by
itself, does not constitute bad faith. <u>See</u> <u>In re Ragos</u>, 700
F.3d 220, 227 (5th Cir. 2012) ("[R]etention of exempt social
security benefits alone is legally insufficient to support a
finding of bad faith under the Bankruptcy Code); <u>In re Cranmer</u>,
697 F.3d 1314, 1319 (10th Cir. 2012) ("When a Chapter 13 debtor
calculates his repayment plan payments exactly as the Bankruptcy
Code and the Social Security Act allow him to, and thereby
excludes SSI, that exclusion cannot constitute a lack of good
faith.").

More fundamentally, the concerns over abuse raised by the Trustee are best addressed to Congress, not to this Court. The function of the judiciary is to apply the law, not to rewrite it to conform with the policy positions of litigants. When the statutory language is clear, as it is in this case, our inquiry must end. See In re Sunterra Corp., 361 F.3d 257, 265 (4th Cir. 2004) ("As a settled principle, unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language." (internal quotation marks, citations, and alteration omitted)).[16]

In sum, we hold that, for both above-median income and below-median income debtors, Social Security income is excluded from the calculation of "projected disposable income" under § 1325(b)(2).

### B.

We next address whether the district court erred when it disregarded Mort Ranta's Social Security income for purposes of evaluating whether his plan was feasible. The "feasibility" requirement is expressed in § 1325(a)(6), which states that the

---

[16] Because we hold that the Bankruptcy Code expressly excludes Social Security income from the calculation of "projected disposable income," we do not reach Mort Ranta's alternative argument that the Social Security Act protects Social Security income from the operation of Chapter 13 proceedings. See 42 U.S.C. § 407.

plan shall be confirmed if "the debtor will be able to make all payments under the plan and to comply with the plan."

The bankruptcy court reasoned that if Social Security income is excluded from "disposable income," then it must also be excluded when evaluating whether the plan is feasible. But nothing in the Code supports this conclusion. Section 1325(a)(6) simply states that a debtor must be able to make the payments required by the plan; it does not state that only "disposable income" may be used to make payments. Further, it has long been established that Social Security income may be used to fund a Chapter 13 plan. See 11 U.S.C. § 109(e) (allowing individuals with "regular income" to be debtors under Chapter 13); United States v. Devall, 704 F.2d 1513, 1516 (11th Cir. 1983) (explaining that originally only "wage earners" could file under Chapter 13, and that in 1978 Congress amended the Code to extend relief to individuals with "regular income," in part, to benefit Social Security recipients) (citing S.R. No. 95-989, at 13 (1978), 1978 U.S.C.C.A.N. 5799; H.R. No. 95-595, (1977), 1978 U.S.C.C.A.N. 5963, 6080); see also Hon. W. Homer Drake, Hon. Paul W. Bonapfel & Adam M. Goodman, Chapter 13 Practice and Procedure § 3:7 (2012) (noting that "permissible sources of regular income include . . . social security benefits"). According to the bankruptcy court's interpretation of the Code, however, it is unlikely that a debtor whose primary

source of income is Social Security could ever propose a
confirmable plan, for the debtor would be unable to prove
feasibility. There is no indication Congress intended to throw
this kind of obstacle to relief in the way of Social Security
recipients when it revised the definition of "projected
disposable income" with the BAPCPA.

We therefore hold, in agreement with the Sixth Circuit,
that "a debtor with zero or negative projected disposable income
may propose a confirmable plan by making available income that
falls outside of the definition of disposable income—such as
. . . benefits under the Social Security Act—to make payments
under the plan." Baud, 634 F.3d at 352 n.19; see also In re
Kibbe, 361 B.R. 302, 314 n.11 (B.A.P. 1st Cir. 2007) (per
curiam) (noting that the revised definition of projected
disposable income "does not preclude a debtor's use of available
monies excluded from the definition . . . to support the
feasibility of the debtor's plan). Thus, in evaluating whether
a debtor will be able to make all payments under the plan and
comply with the plan, the bankruptcy court must take into
account any Social Security income the debtor proposes to rely
upon, and may not limit its feasibility analysis by considering
only the debtor's "disposable income." If the debtor's actual
net income, including Social Security income, is sufficient to
cover all the required payments, the plan is feasible.

30

In arguing otherwise, the Trustee cites a single bankruptcy court case from another circuit, which we do not find persuasive. See In re Schanuth, 342 B.R. 601, 605 (Bankr. W.D. Mo. 2006) (holding that a debtor's plan was not feasible because the monthly payments exceeded "disposable income"). The Schanuth court relied exclusively on bankruptcy cases predating the BAPCPA, without taking into account how the BAPCPA's revised definition of "disposable income" affects the feasibility analysis. See id. n.11 (collecting cases). Although before the BAPCPA, it would make sense to find a plan unfeasible when "disposable income" exceeded the payments required by the plan, that is no longer the case.

For these reasons, we hold that when a Chapter 13 debtor proposes to use Social Security income to fund a plan, the bankruptcy court must consider that income in evaluating the plan's feasibility under § 1325(a)(6).


IV.

Given that circumstances may have changed during the pendency of this appeal, we do not decide whether Mort Ranta's plan should be confirmed, but instead remand the case to allow the bankruptcy court to reconsider the plan in light of our holdings. Accordingly, we vacate the order of the district court and remand the case to the district court with instructions to

31

remand   to   the   bankruptcy   court   for   further   proceedings

consistent with this opinion.

                                                    VACATED AND REMANDED

FABER, Senior District Judge, dissenting:

I respectfully dissent from the majority's conclusion that the bankruptcy court's denial of confirmation of the debtor's Chapter 13 plan was a final order and, accordingly, believe that appellate jurisdiction is not proper in this case.  The nature of appellate jurisdiction in bankruptcy, the effects of "flexible finality" on the same, and the weight of precedent from other circuit courts of appeals all compel my dissenting opinion.

I.

While federal district courts have original jurisdiction over all cases under the Bankruptcy Code, see 28 U.S.C. § 1334(a)-(b), they also have appellate jurisdiction over, among other matters, bankruptcy court orders, whether final or interlocutory.  See 28 U.S.C. § 158(a)(1), (3).  Circuit courts of appeals also have appellate jurisdiction over final bankruptcy court orders as an additional layer of appellate review beyond the district court's own appellate review.  See 28 U.S.C. § 158(d)(1)(stating that circuit courts of appeals have appellate jurisdiction over all final orders of a district court

where that district court heard bankruptcy appeals pursuant to
28 U.S.C. § 158(a)).[1]

Separately, circuit courts of appeals have direct appellate
jurisdiction in bankruptcy, conditioned upon certification by
the lower court involved in the bankruptcy proceeding.  See 28
U.S.C. § 158(d)(2)(A).  This type of direct appeal in bankruptcy
requires certification from a lower court that the bankruptcy
order being appealed involves (1) a legal question where no
circuit court of appeals or Supreme Court decision controls, (2)
a matter of public importance, (3) a legal question requiring
resolution of conflicting decisions, or (4) a situation where an
interlocutory appeal might "materially advance the progress of"
the bankruptcy case or proceeding below.[2]  See id.  Notably, an

_____

[1] In Connecticut National Bank v. Germain, the Supreme Court
noted that 28 U.S.C. §§ 158(d)(1) and 1291 "do not pose an
either-or proposition" regarding the courts of appeals'
appellate jurisdiction over final orders in bankruptcy.  See
Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253 (1992).
Accordingly, the statutes overlap to an extent, granting
appellate jurisdiction over final orders in bankruptcy to
circuit courts of appeals through two points of authority.

[2] 28 U.S.C. § 158(d)(2) essentially grants appellate
jurisdiction over interlocutory orders in bankruptcy to circuit
courts of appeals.  The Supreme Court has specifically held,
however, that 28 U.S.C. § 158(d)(2) does not, by negative
implication, limit circuit courts of appeals' appellate
jurisdiction over interlocutory appeals pursuant to 28 U.S.C. §
1292(b).  Connecticut Nat. Bank v. Germain, 503 U.S. at 253.
Accordingly, these statutes overlap in a manner similar to 28
U.S.C. §§ 158(d)(1) and 1291.  Additionally, while 28 U.S.C. §§
158(d)(2) and 1292(b) differ in ways largely irrelevant here,
(Continued)

appeal under 28 U.S.C. § 158(d)(2), as opposed to an appeal under 28 U.S.C. § 158(d)(1), does not stay any proceeding in the lower court from which the appeal is taken. <u>See</u> 28 U.S.C. § 158(d)(2)(D).  Instead, a lower court may, though it need not, affirmatively issue a stay when a circuit court of appeals receives an appeal under Section 158(d)(2). <u>See</u> <u>id.</u>

As the majority rightly notes, the debtor in this case "does not claim to have complied with the procedure for certifying a direct appeal" under 28 U.S.C. 158(d)(2). <u>Supra</u> p. 7 n.5.  However, the record clearly shows that the debtor <u>attempted</u> to comply with one or another procedure for obtaining interlocutory review, but either failed to comply fully or was denied such review.  For example, at the confirmation hearing, the debtor asked the bankruptcy court to grant an interlocutory appeal.  The bankruptcy court denied the debtor's request.  The record also shows that the debtor, in his motion for leave to appeal to the district court, acknowledged that more circuit courts of appeals than not have held that a denial of confirmation of a Chapter 13 plan is interlocutory.  On the one hand, the district judge below, in his written order affirming the bankruptcy court's denial of confirmation, chose not to

_____

the two statutes are significantly similar in one regard—both contain procedural requisites for taking an interlocutory appeal.

address the basis for the district court's appellate
jurisdiction. By the same token, the district judge did not
opine that any issue in the debtor's appeal merited
interlocutory review. Just as the opportunity to pursue
interlocutory review by the district court under 28 U.S.C. §
158(a)(3) was quashed at the bankruptcy court level, the
opportunity to pursue interlocutory review by this Court was
lost at both the bankruptcy and district court levels, although
not for the debtor's lack of <u>attempting</u> to pursue interlocutory
review.

As an alternative, the debtor now seeks to re-cast an
interlocutory appeal as an appeal from a final order. The
majority complied, citing the "flexible finality" concept unique
to bankruptcy while simultaneously ignoring the significance of
procedural requirements for taking an interlocutory appeal in
bankruptcy.


## II.

### A.

Nearly all circuit courts of appeals agree that "the
concept of 'finality' is more flexible in the bankruptcy context
than in ordinary civil litigation." <u>In re Flor</u>, 79 F.3d 281,
283 (2d Cir. 1996)(holding a denial of confirmation of a Chapter
11 plan is interlocutory and reasoning that the Second Circuit's

holding in <u>Maiorino v. Bradford Savings Bank</u>, a Chapter 13 case, "applies with comparable force" in the Chapter 11 context)(citing <u>Maiorino v. Branford Sav. Bank</u>, 691 F.2d 89, 91 (2d Cir. 1982)); <u>see also</u> <u>In re Rudler</u>, 576 F.3d 37, 43 (1st Cir. 2009)(noting that finality is given a more flexible interpretation in bankruptcy relative to other contexts). However, the Tenth Circuit Court of Appeals has specifically held that it does not apply a flexible finality standard in bankruptcy. <u>In re Simons</u>, 908 F.2d 643, 644 (10th Cir. 1990)(noting that finality for purposes of 28 U.S.C. § 158 is interpreted in traditional, not flexible, terms). Nevertheless, flexible finality is not a novel concept in bankruptcy, and the purposes underlying its application persist over time.

The First Circuit Court of Appeals distilled the "flexible finality" concept in <u>In re Saco Development Corporation</u> after recognizing that application of traditional finality principles in bankruptcy would lead to "nearly insuperable obstacles to a finding of finality."[3]  16 Charles Alan Wright, Arthur R. Miller

---

[3] The majority apparently contends that <u>Maiorino</u>, because it did not distill flexible finality as <u>Saco</u> did only one year later, was blind to the need for such a concept in bankruptcy. In other words, the majority implies that <u>Maiorino</u>'s holding—denial of confirmation of a Chapter 13 plan is interlocutory—was derived purely from traditional finality principles. <u>See</u> <u>supra</u> p. 13. <u>Saco</u>'s tracing of the history of finality in bankruptcy refutes this as does the Second Circuit Court of Appeals'
(Continued)

& Edward H. Cooper, <u>Federal Practice and Procedure</u> § 3926.2, at
326 (3d ed. 2012); <u>see</u> <u>In re Saco Local Dev. Corp.</u>, 711 F.2d 441
(1st Cir. 1983)(Breyer, J.).  In <u>Saco</u>, the bankruptcy court had
ruled that an insurance company creditor in Chapter 7
liquidation was "entitled to priority payment of Saco's employee
group life, health and disability insurance premiums."  <u>Id.</u> at
442.  While the maximum dollar amount of unpaid premiums for
which the insurance company could receive priority treatment was
$106,000, the actual amount was uncertain because the insurance
company's priority was subject to a reduction provided for wage
priorities that other creditors might enjoy.  <u>Id.</u>  In this
context, namely where one creditor's rights are fixed vis-à-vis
the bankruptcy estate generally but subject to alteration vis-à-
vis other creditors' rights, the First Circuit Court of Appeals
applied a "flexible finality" standard, holding that "an order
that conclusively determines a separable dispute over a
creditor's claim or priority" is a final order, even when other
creditors' unfixed rights could ultimately alter the separable
dispute's outcome at a later stage in the bankruptcy case.  <u>Id.</u>
at 445-46; <u>see</u> <u>id.</u> at 443 (acknowledging that "[w]ere this not a
bankruptcy case, we doubt that the kind of order before us would

confirmation of <u>Maiorino</u>'s holding in <u>In re Flor</u>.  <u>See generally</u>
<u>Saco</u>, 711 F.2d at 444-46; <u>In re Flor</u>, 79 F.3d at 283.

be considered 'final.'"); cf. In re Bartee, 212 F.3d at 283
(noting that the bankruptcy court's order, among other things,
"conclusively determined the substantive rights at issue and
ended the dispute.").

The same rationale from Saco applies, for example, when
lower courts make debt dischargeability determinations, which
are generally considered final orders under the "flexible
finality" standard.  See In re Gagne, 394 B.R. 219, 224-25
(B.A.P. 1st Cir. 2008); In re Barrett, 337 B.R. 896, 898 (B.A.P.
6th Cir. 2006) (aff'd 487 F.3d 353).  Specifically, once a
bankruptcy court determines whether a specific debt is
dischargeable, all that remains is to enter judgment as to that
specific debt.  However, several other matters usually remain
for the bankruptcy court's determination.  Nevertheless, the
discharge of one debt can affect the status and rights of one or
more creditors.  Thus, although such a determination likely
would not be final outside bankruptcy, see Saco, 711 F.2d at
443, it is final inside bankruptcy precisely because "flexible
finality" allows courts with appellate jurisdiction in
bankruptcy to pluck sufficiently discrete disputes out of the
larger, usually ongoing, bankruptcy case.  In other words,
"flexible finality" allows circuit courts of appeals to
immediately review discrete disputes in bankruptcy cases where
traditional finality standards would not.  However, "flexible

39

finality" does not, and should not, blend a circuit court of appeals' appellate jurisdiction over final orders as provided under 28 U.S.C. § 158(d)(1) with a circuit court of appeals' direct appellate jurisdiction over interlocutory matters as provided under 28 U.S.C. 158(d)(2) and 1292(b).  Otherwise, to extend the concept of flexible finality too far would render useless the procedures for taking direct appeals in bankruptcy and would render as "mere surplusage" the statutory language outlining those procedures in 28 U.S.C. §§ 158(d)(2) and 1292(b).  See Freeman v. Quicken Loans, Inc., 132 S. Ct. 2034, 2043 (2012)(stating that the canon against surplusage favors statutory interpretation that avoids rendering statutory text superfluous); In re Total Realty Management, LLC, 706 F.3d 245, 251 (4th Cir. 2013)("Principles of statutory construction require a court to construe all parts to have meaning and, accordingly, avoid constructions that would reduce some terms to mere surplussage [sic].")(internal quotations omitted).[4]

Given the core purpose of the flexible finality standard in bankruptcy, denial of confirmation of a proposed reorganization

---

[4]  The majority obliquely responds to this argument by stating that, despite its holding today, avenues for interlocutory relief remain open.  Supra p. 18 n.13.  I do not dispute such avenues remain open.  Rather, I contend such avenues become useless the more willing a court remains to stretch the concept of "flexible finality" in bankruptcy.

40

plan cannot convincingly be a "discrete dispute" appealable as a final order under any standard of finality. Indeed, Saco and others imply that a discrete dispute for purposes of "flexible finality" most properly refers to situations where one creditor's rights become fixed while other issues in the bankruptcy case remain unresolved.[5]  Cf. Matter of Lybrook, 951 F.2d 136, 137 (7th Cir. 1991)(orders in ongoing bankruptcy cases can be final when they "resolve[] a free-standing dispute of the sort that, outside of bankruptcy, would be an independent lawsuit.")(Posner, J.).  That is not this case.  Essentially everything remains unresolved in the Chapter 13 bankruptcy below.  The majority erroneously argues the opposite. Specifically, because "[t]he bankruptcy court's order denied confirmation of [the debtor's] plan and directed the case dismissed unless he took further action," the majority concludes

---

[5] A wholly reasonable exception to the standard discrete dispute justification for applying flexible finality is found in this Court's holding in McDow v. Dudley, 662 F.3d 284 (2011). In McDow, this Court held that denying a motion to dismiss a Chapter 7 case as abusive, under 11 U.S.C. § 707(b), is a final order under "flexible finality."  Id. at 290.  After a thorough examination of the nature of a § 707(b) motion, including the Congressional policy behind that provision, this Court concluded, in part, that allowing immediate appeal promoted the statutory purposes of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  See id.  Unlike in McDow, however, applying flexible finality to denial of confirmation of a reorganization plan serves no special Congressional purpose, contrary to the majority's broad appeal to debtor sympathy. Supra p. 18.

that nothing remains for the bankruptcy court to do except enter dismissal, "unless [the debtor takes] further action." Supra p. 11. The majority's diminution of the twenty-one day window within which the debtor may, among other things, file an amended plan and resume progress toward settling at least some expectations among the parties to the reorganization underscores the weakness of the position that "flexible finality" counsels a finding of finality when confirmation of a reorganization plan is denied. Indeed, an order cannot sensibly be final when it not only fails to dismiss the underlying case but additionally advises that a party may revise its own court filings.

### B.

Without squarely addressing the merits, one can readily glean the debtor's aim from the record below—he seeks immediate resolution of what he asserts is a novel legal issue. Assuming the debtor is correct, his case's legal novelty makes it a prime candidate for interlocutory review under 28 U.S.C. 158(d)(2) or 28 U.S.C. 1292(b). However, any novelty of this case's merits, and any eagerness to have this Court reach them, should not bend the judicially-crafted "flexible finality" concept such that it renders the multiple avenues for interlocutory appeals unnecessary.

However, I do not write separately to fault the debtor for not obtaining interlocutory review or failing to march in lock-

42

step with its attendant procedural formalities. Instead, I write separately, in part, to show how the statutory procedures for an interlocutory appeal in this case could have avoided the waste of judicial resources that has already occurred.[6] Recall, pursuing an interlocutory appeal under either 28 U.S.C. § 158(d)(2) or § 1292(b) does not automatically stay the proceedings below. See 28 U.S.C. §§ 158(d)(2)(D) and 1292(b). In other words, had the debtor pursued or been granted interlocutory review, the bankruptcy case could have proceeded below without pause. Creditor disbursements could have been made without stop-gap measures described below. The debtor could have filed an amended plan or converted his Chapter 13 reorganization to Chapter 7 liquidation. Instead, the bankruptcy case below has been stayed pending this appeal. Indeed, to achieve the same end of making disbursements to creditors pending appeal of this case, the bankruptcy court

---

[6] As explained more fully below, while encouraging judicial economy is a laudable goal and should be pursued where possible, enshrining that goal in a rule requiring application of a multi-factor test for finality, as some circuit courts of appeals have done, results in a particularly indeterminate rule since "judicial economy" can be framed so many different ways. This is particularly troublesome when the rule bears so heavily on whether a court has jurisdiction, an issue that generally should not be fact-intensive or merits-based. See Matter of Lopez, 116 F.3d 1191, 1194 (7th Cir. 1997)("Jurisdictional rules ought to be simple and precise so that judges and lawyers are spared having to litigate over not the merits of a legal dispute but where and when those merits shall be litigated.")(Posner, J.).

entered a conditional order confirming the debtor's plan. The bankruptcy court likely did not enter the conditional order because it suddenly changed its mind about the debtor's plan. Rather, the bankruptcy court likely entered the conditional order to address practical difficulties the Chapter 13 Trustee would face in administering a bankruptcy estate while an appeal of a purportedly final order to this Court was pending.[7] The conditional order's text makes this point clear.

I also write separately to show that, with today's ruling, this Court strays from the goal of "flexible finality," reviewing discrete disputes within an ongoing bankruptcy case, instead choosing to join those circuit courts of appeals that have effectively made the test for "flexible finality" indeterminate. Consequently, along with the adoption of an

---

[7] The debtor's argument that the bankruptcy court's conditional order confirming the debtor's plan cures any jurisdictional defect is meritless. First, as a definitional matter, the fact that the order is "conditional" eliminates the possibility that it is "final," unless conditions are satisfied. Here, the condition to be satisfied is this Court's decision on appeal. Second, the Chapter 13 Trustee, and not the debtor, moved for the conditional order in this case. The Trustee did so in order to ensure continuous and orderly administration of the bankruptcy estate, because an appeal like the one in this case disrupts bankruptcy estate administration. Lastly, the debtor cites Equipment Finance Group, Inc. v. Traverse Computer Brokers, 973 F.2d 345 (4th Cir. 1992) to support his argument that the conditional order cures any jurisdictional defect. That case does not apply here, where the order at issue is not a final judgment but instead is, patently, a conditional order.

44

indeterminate test for finality in bankruptcy arises the specter of jurisdiction creep.[8]  Bit by bit, the majority's version of "flexible finality" will allow bankruptcy events less significant than denial of confirmation to be final for purposes of appeal,[9] so long as the lower court "intended" finality or so long as judicial economy purportedly bends in just the right direction.  In other words, the majority's stated appeal to pragmatism equates to acquiescence to indeterminacy, a regrettable move endorsed by some circuit courts of appeals that have held that denial of confirmation of a reorganization plan can be a final order.

### III.

### A.

Regarding this Court's precedent, the majority cites several cases that purportedly demonstrate a "long history of allowing appeals from debtors whose proposed plans are denied

---

[8] See Thomas C. Marks, Jr., Jurisdiction Creep and the Florida Supreme Court, 69 Alb. L. Rev. 543 n.* (2006)(citing two related versions of the military term "mission creep" and drawing the strongest parallel with the latter, for purposes of the term "jurisdiction creep").

[9] Thankfully, the majority has drawn a line where it will consider some bankruptcy matters interlocutory. Regrettably, however, the examples cited demonstrate the line's inadequacy and, moreover, merely list types of decisions that are interlocutory by any measure—granting interim fee awards and continuing an automatic stay until a motion hearing is held, for example. See supra pp. 10-11.

confirmation, without questioning the finality of the underlying

order."   Supra p. 8.   The majority then relegates another of

this   Court's   cases   to   a   footnote,   assigning   it   "minimal

persuasive   authority"   because   it   relied   entirely   on   out-of-

circuit   authority   without   any   independent   reasoning."   Supra p.

8 n.6.; see In re Massey, 21 F. App'x 113 (4th Cir. 2001).

However,   while   citing   opinions   that   do   not   squarely   address

finality   in   bankruptcy   and,   by   proxy,   jurisdiction,   the   majority

ignores   this   Court's   general   distaste   for   relying   on   sub

silentio   holdings.   See   United States v. Horton, 693 F.3d 463,

479 n.16 (4th Cir. 2012)(Agee, J.)(citing several Supreme Court

and Fourth Circuit cases for the proposition that a sub silentio

holding   is   not   binding   precedent   or,   in   other   words,   that   this

Court   is   "bound   by   holdings,   not   unwritten

assumptions.")(quoting Fernandez v. Keisler, 502 F.3d 337, 343

n.2 (4th Cir. 2007)).

    I   find   it   a   curious   supposition   that   the   persuasive   value

of   a   string   of   cases   ignoring   an   issue   ought   to   outweigh   the

persuasive   value   of   a   case   that   squarely   addresses   that   same

issue.   See   In re Massey, 21 F. App'x at 114 (4th Cir.

2001)(holding   that   "[a]n   order   denying   confirmation   of   a

proposed Chapter 13 plan, without also dismissing the underlying

petition or proceeding, is not final for purposes of appeal.").

Nevertheless,   this   is   what   the   majority   posits   through   its

46

argument by analogy and reliance on <u>sub silentio</u> holdings.  <u>See</u>
<u>supra</u> pp. 7-8.   Otherwise, the majority's assertion that its
"holding today does not extend [this Court's] appellate
jurisdiction but instead justifies its existing parameters" goes
unsupported since jurisdiction in this case depends on the
finality of a denial of confirmation.  <u>See</u> <u>supra</u> p. 17.

I recognize this Court's general disposition with regard to
its own unpublished opinions.   <u>See, e.g.</u>, Loc. R. 32.1
(disfavoring citation to this Court's unpublished opinions of a
certain age).   Nevertheless, I simply cannot find that reliance
on <u>sub silentio</u> holdings or other assumptions is preferable.
Accordingly, I believe this Court's precedent is, at the very
least, confused regarding whether a denial of confirmation of a
reorganization plan is a final order and, as a result, I
similarly believe that examining authority from other circuit
courts of appeals as persuasive is appropriate in this case.

B.

More circuit courts of appeals than not have concluded that
a denial of confirmation of a reorganization plan is not a final
order in bankruptcy.  <u>See</u> <u>In re Flor</u>, 79 F.3d 281, 283 (2d Cir.
1996)(holding a denial of confirmation of a Chapter 11
reorganization plan was non-final, but noting that its holding
derived from an earlier case, which held that a denial of
confirmation of a Chapter 13 reorganization plan was non-

47

final)(citing <u>Maiorino v. Branford Savings Bank</u>, 691 F.2d 89 (2d
Cir. 1982)); <u>In re Zahn</u>, 526 F.3d 1140, 1143-44 (8th Cir.
2008)(holding a denial of confirmation of a Chapter 13
reorganization plan was non-final); <u>In re Lievsay</u>, 118 F.3d 661,
662 (9th Cir. 1997)(holding a denial of confirmation of a
Chapter 11 reorganization plan was non-final); <u>In re Simons</u>, 908
F.2d 643, 645 (10th Cir. 1990)(holding a denial of confirmation
of a Chapter 13 reorganization plan was non-final). Other
circuit courts of appeals, while not having squarely answered
whether a denial of confirmation of a reorganization plan is a
final order in bankruptcy, indicate they lean toward the
conclusion that a denial of confirmation is interlocutory. <u>See</u>
<u>In re Watson</u>, 403 F.3d 1, 5 (1st Cir. 2005)(holding that "even
if [an earlier] order denying confirmation of the [Chapter 13]
plan was not final at the time it was issued," the order was
later final <u>after</u> the debtor's opportunity to file an amended
plan or take other action had passed); <u>In re Coffin</u>, 435 B.R.
780, 784 (B.A.P. 1st Cir. 2010)(noting, in general, that orders
denying confirmation of a Chapter 13 reorganization plan are
interlocutory, but holding that the order in that case satisfied
the requirements in 28 U.S.C. § 158(a)(3) for taking an
interlocutory appeal from the Bankruptcy Court to the First
Circuit's Bankruptcy Appellate Panel); <u>cf.</u> <u>In re UAL Corp.</u>, 411
F.3d 818, 821 (7th Cir. 2005)(Posner, J.)(noting that a "Chapter

48

11 bankruptcy is not final until a plan of reorganization is
confirmed."). Two circuit courts of appeals have held that
denial of confirmation of a reorganization plan can be final.[10]
See In re Armstrong World Indus., Inc., 432 F.3d 507, 511 (3d
Cir. 2005); In re Bartee, 212 F.3d 277, 283-84 (5th Cir.
2000)(noting that, even under its intent-based inquiry, the
Fifth Circuit Court of Appeals could find that denial of
confirmation of a reorganization plan is interlocutory "if the
order addressed an issue that left the debtor able to file an
amended plan (basically to try again)").

      The majority argues that circuit courts of appeals that
conclude denial of confirmation of a Chapter 13 plan is
interlocutory apparently ground their decision "upon standard
finality principles." Supra p. 13. I do not believe this to be
the case. Indeed, by so arguing, the majority projects the
Tenth Circuit Court of Appeals' reasoning in In re Simons onto
the circuit courts of appeals that happen to agree with the
Tenth Circuit Court of Appeals' conclusion on this issue,
despite their differing views on how finality is evaluated in
bankruptcy. Recall, In re Simons explicitly grounded its
conclusion upon standard finality principles. See In re Simons,

---

      [10] I can find no circuit court of appeals that has held a
denial of confirmation of a reorganization plan is per se a
final order.

908 F.2d at 644.  However, other circuit courts of appeals that
conclude a denial of confirmation of a reorganization plan is
interlocutory arrive at that conclusion despite the flexible
concept of finality in bankruptcy proceedings.  See In re Flor,
79 F.3d at 283; In re Zahn, 526 F.3d at 1143.  In other words,
even keeping the flexible finality concept in mind, reasonable
jurists conclude that a denial of confirmation of a
reorganization plan is, nevertheless, interlocutory.  This
conclusion is not without reason.

For example, before deciding In re Flor, the Second Circuit
Court of Appeals addressed the finality of a denial of plan
confirmation in the context of Chapter 13 reorganization plans
in Maiorino v. Branford Savings Bank, 691 F.2d 89 (2d Cir.
1982).  There, the Second Circuit Court of Appeals held that a
denial of confirmation of a Chapter 13 plan is not a final
order, even when an order confirming a plan is final.  The
Maiorino Court explained in more detail:

> Nor do we find it strange as a matter of policy that
> an order confirming a plan which would, we agree, be
> final, is appealable by an objecting creditor while an
> order rejecting a proposed plan is not final and not
> appealable by the Chapter 13 debtor [except as an
> interlocutory appeal].  So long as the [Chapter 13
> bankruptcy] petition is not dismissed [. . .] it is
> open to the debtor to propose another plan, and for
> all that an appellate court would know in any given
> case such a plan might well be acceptable to the
> parties or bankruptcy judge concerned.

_Maiorino_, 691 F.2d at 91 (emphasis added).  In _In re Zahn_, the
Eighth Circuit Court of Appeals used similar reasoning to draw
the distinction between the finality of confirmation of a
reorganization plan and the interlocutory character of denial of
confirmation of a reorganization plan.  There, the Eighth
Circuit Court of Appeals noted that orders denying confirmation
of a reorganization plan "leave the way open for negotiations"
among the debtor and various creditors laying claim to the
bankruptcy estate.  _In re Zahn_, 526 F.3d at 1143 (8th Cir.
2008).  Nevertheless, the majority apparently sees no reasoned
basis for distinguishing between the finality of confirmation of
a reorganization plan and the denial of confirmation of a
reorganization plan, relying, in part, on the supposedly more
pragmatic approach to "flexible finality" espoused by the Third
and Fifth Circuit Courts of Appeals.

However, even _In re Bartee_ provides some support for
distinguishing between the finality of confirmation of a
reorganization plan and denial of confirmation of a
reorganization plan.  There, the bankruptcy court's order
denying confirmation of the reorganization plan also classified
a creditor's claim as secured over the debtor's objection;
instead, the debtor wanted the secured creditor's claim to be
treated as unsecured and subject to the Bankruptcy Code's
cramdown provision.  _In re Bartee_, 212 F.3d at 281.  At that

51

point, the secured creditor's rights were fixed and no amount of
amended Chapter 13 plans could change the secured creditor's
status.  In other words, even though the bankruptcy court denied
confirmation of the reorganization plan, it also fixed one
party's rights such that a "discrete dispute" existed within the
larger bankruptcy case.  Accordingly, the bankruptcy court order
in In re Bartee both denied confirmation of the reorganization
plan and fixed the secured party's rights. On the latter basis
alone, the bankruptcy court order in In re Bartee could perhaps
be considered final under the "flexible finality" standard
without needing to consider the question of a denial of
confirmation's finality.

        Notwithstanding the unique factual issue in In re Bartee,
the majority insists that a more "pragmatic" rule, like those
adopted by the Third and Fifth Circuit Courts of Appeals, best
suits denials of confirmation.  However, as noted above, I
believe these rules are too indeterminate to keep the "flexible
finality" concept from effectively erasing the line between
final and interlocutory orders in bankruptcy, a result
inconsistent with flexible finality's goal of immediately
reviewing discrete disputes within an ongoing bankruptcy case.
One set of commentators stated it well

        the Third Circuit—with a close parallel in the Ninth
        Circuit—has taken flexibility at least as far as any,
        announcing an approach that could justify intensely

52

> case-specific analysis that would find finality
> whenever immediate appeal seems desirable. It seeks to
> effectuate a practical termination of the matter,
> considering the impact upon the assets of the bankrupt
> estate, the necessity for further fact-finding on
> remand, the preclusive effect of our decision on the
> merits on further litigation, and whether the interest
> of judicial economy would be furthered. These factors
> could lead almost anywhere. . .The interest of
> judicial economy can embrace the entire calculus of
> appealability. Decisions taking this approach all have
> reached results that seem sensible enough, but have
> not suggested any apparent limits

16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
Federal Practice and Procedure § 3926.2, at 339-342 (3d ed.
2012). For these reasons, examining factors such as the lower
court's "intent" with regard to finality or enshrining judicial
economy as part of a jurisdictional rule crafts not a rule but a
set of exceptions.

Separately, the majority highlights the Fifth Circuit Court
of Appeals' disfavor of a situation where a debtor "must choose
between filing an unwanted or involuntary plan and then
appealing his own plan, or dismissing his case and then
appealing his own dismissal."[11]      Id.   I believe that this

---

[11] On this point, the majority's concerns regarding standing
are unwarranted. See supra p. 15 n.10. When appealing one's
own plan, no matter how odd a procedure it might seem, a party
can nonetheless be a "person aggrieved," even if a second,
third, or eighth amended plan is finally confirmed. This is so
because each previous denial of confirmation—which I contend
would be interlocutory—merges with the plan's final
confirmation. See In re Giesbrecht, 429 B.R. 682, 688 (B.A.P.
9th Cir. 2010); In re Pearson, 390 B.R. 706, 710 (B.A.P. 10th
(Continued)

rationale, which contrasts starkly with that used by the Second
and Eighth Circuit Courts of Appeals as explained above, assumes
too much of the debtor's intent and, from a policy point of
view, "there is something to be said in a day of burgeoning
appellate dockets for taking care not to construe jurisdictional
statutes—particularly those conferring power on the parties to
agree to a direct appeal to the court of appeals—with great
liberality."   Maiorino, 691 F.2d at 91.   Moreover, the chance
that a bankruptcy court might ultimately confirm a plan with
which the debtor strongly disagrees should not override the
value of negotiation in the plan formulation process.


IV.

Considering all of the jurisdictional statutes relevant
here, the debtor's quest to shape Fourth Circuit law on the
merits of his case might more properly have followed the routes

---

Cir. 2008)(vacated as moot).   This merger concept is not unique
to bankruptcy.   See, e.g., Shannon v. General Electric Co., 186
F.3d 192 (2d Cir. 1999)(Sotomayor, J.)("When a district court
enters a final judgment in a case, interlocutory orders rendered
in the case typically merge with the judgment for purposes of
appellate review  .  .  .  By making interlocutory orders
unappealable until a final judgment has been entered, these
rules advance the historic federal policy against piecemeal
appeals.")(citations and internal quotation marks omitted); cf.
Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 430
(1985)("Congress has expressed a preference that some erroneous
trial court rulings go uncorrected until the appeal of a final
judgment.").

provided under either 28 U.S.C. §§ 158(d)(2) or 1292(b)—routes provided for interlocutory appeals. Nevertheless, the debtor's case wended its way here under the pretense of an appeal pursuant to 28 U.S.C. § 158(d)(1), an appeal of a purportedly final order, which it should not be, even under the flexible standard of finality applied in bankruptcy.

However, by flexing "flexible finality" in this way, the majority effectively reads out the avenues for interlocutory relief afforded by bankruptcy's jurisdictional statutes. Moreover, the majority's rule in this case discourages negotiation and mediation in reorganization cases where, frankly, those processes are needed. At the same time, the majority's decision encourages start-and-stop appeals, thus hampering the aim of judicial economy the majority purports to achieve with its ruling. Finally, the majority needlessly expands appellate jurisdiction in an area where it has been carefully circumscribed. I find no reasonable basis for this jurisdictional overreach.

For all these reasons, I dissent, with respect, from the decision of the majority.